# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| OCEANS HEALTHCARE, L.L.C., | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00175 |
| | § | Judge Mazzant |
| ILLINOIS UNION INSURANCE | § | |
| COMPANY. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Illinois Union Insurance Company's Motion for
Judgment on the Pleadings (Dkt. #17) and competing Plaintiff's Rule 12(c) Motion for Judgment
on the Pleadings (Dkt. #21). The Court, having reviewed the motions, evidence, and relevant
pleadings, finds that Plaintiff's motion should be denied and Defendant's motion should be granted
in part.

## BACKGROUND

Plaintiff Oceans Healthcare, L.L.C. ("Oceans") is a behavioral health provider based in
Plano, Texas. Illinois Union Insurance Company ("IUIC") is an insurance provider. In 2012,
IUIC issued Oceans claims-made, non-duty to defend Ace Express Company Management
Indemnity Package, Policy No. G23667538 001 (the "Policy"). The Policy is described as a
"run-off" because it covers only "Claims" first made during the policy period that allege Wrongful
Acts committed prior to the Run-Off Date of December 27, 2012. The Policy provided, in relevant
part, Directors and Officers and company coverage with a $25,000 retention and $1,000,000
maximum aggregate coverage.

On February 26, 2015, a *qui tam* lawsuit was filed under seal in the United States District
Court for the Eastern District of Louisiana alleging that Oceans knowingly and reckless submitted

false and fraudulent claims for payment to Medicare/Medicaid. On August 27, 2015, the Office of the Inspector General Department of Health and Human Services issued a subpoena to Oceans pursuant to an investigation it was conducting into possible False Claims Act (FCA) violations committed by Oceans. The OIG Subpoena demanded specified documents that were dated, created, revised, or in effect during January 1, 2008, through August 27, 2015 (the "Subpoena Period"). On September 10, 2015, Oceans reported the OIG Subpoena to IUIC and IUIC's then claims administrator—ACE North American Claims ("ACE"). ACE subsequently issued Oceans a coverage position letter to noting that, based on the information provided, it did not appear as though a "Claim," as defined under the Policy, had been made against Oceans. Oceans thereafter responded to the OIG Subpoena and incurred not less than $1,114,504.25 by retaining in-house counsel, outside counsel, and expert witnesses. On August 3, 2017, the *qui tam* Complaint filed against Oceans was unsealed; on August 4, 2017, Oceans notified IUIC of the complaint; and on August 15, 2017, IUIC's new claims administrator responded denying coverage. On August 15, 2017, the *qui tam* complaint against Oceans was dismissed.

On March 15, 2018, Oceans filed the present action in the United States District Court for the Eastern District of Texas. Oceans complaint (Dkt. #1) alleges breach of contract, violations of Chapter 542 of the Texas Insurance Code, and requests attorneys' fees—all premised IUIC's denying coverage of the OIG Subpoena. On May 18, 2018, IUIC filed an answer (Dkt. #6) to Oceans complaint and asserted counterclaims requesting that the court declare: (1) the Policy does not afford coverage for the OIG Subpoena or for the costs incurred by Oceans in responding to the OIG Subpoena because the OIG Subpoena is not a Claim for a Wrongful Act as defined by the Policy; in the alternative, (2) the OIG Subpoena concerns Wrongful Acts that occurred after December 27, 2012, thus the Policy's Run-off exclusion precluded coverage; and, also in the

alternative, (3) the Policy's Government Funding Defense Costs Sublimit provision limits any coverage to $250,000. These claims are the subject of IUIC's present motion for judgment on the pleadings (Dkt. #17).

On August 10, 2018, Oceans filed a response (Dkt. #20) to IUIC's motion for judgment on the pleadings. On August 23, 2018, IUIC filed a reply (Dkt. #22). On August 10, 2018, Oceans filed the present motion for judgment on the pleadings (Dkt. #21) requesting that the Court dismiss with prejudice IUIC's declaratory judgment counterclaims, including its request for attorneys' fees and costs.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings." "A motion brought pursuant to Fed. R. Civ. P 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). The standard applied under Rule 12(c) is the same

as that applied under Rule 12(b)(6). *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Guidry* v. *Am. Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir. 2007).

**ANALYSIS**

The parties' competing motions for judgment on the pleadings places four issues before the Court: (1) whether the OIG Subpoena is a Claim for Wrongful Acts, as defined under the Policy; if so, (2) whether coverage is barred by the Policy's Run-Off Exclusion; and, if not barred, (3) whether coverage is limited to $250,000 under the Policy's Government Funding Defense Costs Sublimit. Lastly, if the OIG Subpoena is not covered under the Policy, (4) whether IUIC is entitled to attorneys' fees and costs.

## I.     Texas Insurance Law

A federal court is required to follow the choice of law rules of the state in which it sits. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Thus, the Court must look to Texas choice of law rules. The parties do not dispute that Texas law applies in the present action. The Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (quoting *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The Court must interpret the policy to discern the intention of the parties as it is expressed in the policy. *Id*. Whether a contract is ambiguous is also a question of law. *Id*. (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998)). An ambiguity is not present simply because the parties advance conflicting interpretations but exists "only if the contractual language is

susceptible to two or more reasonable interpretations." *Id.* (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "'Effectuating the parties' expressed intent is [the Court's] primary concern." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." *Id.* A policy's terms should be given their plain meaning, without inserting additional provisions in the contract. *Id.*

"Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane*, 664 F.3d at 594 (citing *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duties to defend and indemnify are distinct, and one may exist without the other. *Id.*; *see also Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253–54 (5th Cir. 2011). An insurer's duty to defend is determined by the application of the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id.* (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "[T]he duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony*, 647 F.3d at 253 (citing *GuideOne*, 197 S.W.3d at 308). All doubts regarding the duty to defend are resolved in favor of the duty, and the pleadings are construed liberally. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Id.* (citation omitted).

In determining whether an insurer has a duty to defend, the policyholder "bears the initial burden of showing that the claim [in the underlying action] is potentially within the insurance policy's scope of coverage." *Harken Expl Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citation omitted). "However, it is the insurer that carries the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule.'" *Regency Title Company, LLC v. Westchester Fire Ins.*, No. 4:11–cv–390, 2013 WL 6054820, at *4 (E.D. Tex. Nov. 15, 2013) (quoting *Northfield Ins.*, 363 F.3d at 528). In addition, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). An exclusion is ambiguous only if it is clearly susceptible to multiple reasonable interpretations. *Regency Title Co*, 2013 WL 6054820, at *4 (citing *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009)). "[The] rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, the [the rules favoring the insured] do not apply." *Id.* (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir.1998)). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.–Houston [14th Dist.] 1997, writ denied). "Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their 'plain meaning' even if this means coverage is denied." *Regency Title Co.*, 2013 WL 6054820, at *4 (citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 744–45 (5th Cir. 2011)).

"There are two traditional types of insurance policies: occurrence policies and claims-made policies." *Munsch Hardt Kopf & Harr P.C. v. Executive Risk Specialty Ins. Co.*, No. 3:06–cv–01099, 2007 WL 708851, at *3 (N.D. Tex. Mar. 8, 2007) (citing *Matador Petrochemical Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658–59 (5th Cir. 1999)). "Coverage under an occurrence policy is based on the triggering event." *Id.* "However, under a claims-made policy, notice to the insurer is the triggering event and is a condition precedent to coverage." *Id.* "The notice provisions of such policies are therefore strictly construed; otherwise, the insured would receive coverage that was not bargained for." *Id.*; *see also Komatsu v. U.S. Fire Ins. Co.*, 806 S.W.2d 603, 607 (Tex. App.—Fort Worth 1991, writ denied).

With these principles guiding, the Court turns to the parties' arguments.

## II.     Whether the OIG Subpoena constitutes a "Claim" for "Wrongful Acts"

The Policy's Coverage Section Insurance Clause 3 provides:

> The Insurer shall pay the Loss of the Company which the Company . . . becomes legally obligated to pay by reason of a Claim first made against the Company during the Policy Period and reported to the Insurer during the Policy Period and reported to the Insurer . . . for any Wrongful Act taking place on or before the Run-Off Date.

(Dkt. #6, Exhibit 5 at p. 70). IUIC contends that the OIG Subpoena is neither a Claim nor made pursuant to any Wrongful Act.

### i.     A Claim

**Subsection (a)**

Oceans asserts that the OIG Subpoena falls under the Policy's definition of a Claim set out in subsection (a), which provides that a Claim is "a written demand against any insured for monetary damages or non-monetary or injunctive relief." *See* (Dkt. #6, Exhibit 5 at p. 22). IUIC disagrees and argues that the OIG Subpoena does not satisfy subsection (a) because it does not seek any form of relief. Instead, IUIC avers, the OIG Subpoena was simply gathering information

to determine whether there would be a basis for seeking monetary or non-monetary relief from Oceans in the future.  IUIC cites three cases to support its position that the OIG Subpoena is not a written demand for non-monetary relief.  *See Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 F. App'x 241, 252 (6th Cir. 2013); *Musclepharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 754 (10th Cir. 2017); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2017 WL 2954716, at *10 (W.D. Tenn. June 23, 2017).

The parties do not dispute that the OIG Subpoena is a demand.  The Court is left to determine whether the demand for the specified document production—made pursuant to a subpoena— is a form of non-monetary relief.[1]  The Court finds that it is.

The Policy does not define the term "relief," therefore Texas law requires that the term be given its plain, ordinary, and generally accepted meaning.  *See Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 246 (Tex. 1976).  To this end, Oceans points to a court within this district that has considered an analogous situation.  *See Agilis Benefit Services, LLC v. Travelers Casualty and Surety Company of America*, No. 5:08CV213, 2010 WL 11595321, at *1 (E.D. Tex. Feb. 24, 2010) report and recommendation adopted, 2010 WL 8573372 (Apr. 30, 2010).  In *Agilis*, the defendant–insurer issued the plaintiffs–insured a liability policy that covered claims for wrongful acts made against the plaintiffs–insured during the policy period.  *Id.*  Thereafter, the IRS began investigating the plaintiffs–insured for their alleged involvement in promoting and operating tax evasion schemes.  *Id.*  During the investigation, the grand jury issued a subpoena and search warrants that required the plaintiffs–insured to produce financial documents.  *Id.*  The plaintiffs–insured sought reimbursement from the defendant–insurer for costs related to the subpoena and search warrants.  *Id.*  The defendant–insurer argued that the subpoena was not a claim as defined

---

[1] There is no dispute that the OIG Subpoena does not to seek any monetary relief.

under the policy because it was not a written demand for non-monetary relief. *Id*. Similar to the present action, the parties dispute centered on whether a demand for the production of specified documents pursuant to a subpoena constitute a form of non-monetary relief. *Id*. The court looked to the Black's Law Dictionary definition of "relief" and caselaw from other Circuit Courts and determined that the documents the plaintiffs–insured were commanded to produce pursuant to the grand jury subpoena were, in fact, written demands for non-monetary relief. The court held that the term "relief" is "broad enough to include a demand for 'something due,' including a demand a demand to produce documents or appear to testify." *Id*. at *11.

The Court addressed the *Agilis* decision in *Starkey Mortgage*. *See W.R. Starkey Mortgage, LLP v. Chartis Specialty Insurance Co.*, NO. 4:12-CV-219, 2013 WL 12138896 at *6 (E.D. Tex. June 27, 2013). In *Starkey Mortgage*, the Department of Justice sent the plaintiff–insured an email requesting the production of certain documents and threatened to issue a subpoena if the plaintiff–insured failed to comply. *Id*. at *1–2. The plaintiff–insured produced the requested documents and argued that the DOJ's email was a claim under the controlling insurance policy, which, identical to the Policy in here, broadly defined a claim to include "a written demand for monetary or non-monetary relief." *Id*. The Court emphasized that no court has found that a request for information—that was not accompanied by a subpoena—was sufficient to constitute a demand or a claim. *Id*. at *6. The Court agreed with the principles expressed in *Agilis* but found them inapplicable because, in *Starkey*, the plaintiff–insurer's compliance was voluntary rather than compelled, as in *Agilis*. *Id*. The Court held that "[a] request accompanied by a threat of a subpoena is not sufficient to establish a 'demand for something due,' since without the subpoena, nothing is actually due." *Id*. Thus, implicit in that holding, the Court concurred that a subpoena is determinative as to whether a request is a demand for something due.

The facts in the present action are more analogous to *Agilis* than *Starkey*. Here, Office of Inspector General served Oceans with a subpoena that initially required Oceans to produce certain documents and appear before a special agent of the Office of Inspector General on September 25, 2015. For Oceans' convenience, the OIG Subpoena stated that, in lieu of an appearance, Oceans could just produce the requested documents before September 25, 2018. The OIG Subpoena further stated the document production was "required by law" and that a failure to produce the documents may be taken as a failure to comply with the subpoena, which could expose Oceans to civil liability. For these reasons, the OIG Subpoena is undoubtedly a demand for something due, which the Court, and at least one other court in this district, has adjudged to be a request for non-monetary relief.

The three cases IUIC cited to support its interpretation of the term "relief" are distinguishable for two reasons. First, neither case applies Texas contract law, which the parties do not dispute is the law that governing the interpretation of the Policy. *See ProMedical Health*, 524 F. App'x at 252 (applying Ohio contract law); *Musclepharm*, 712 F. App'x at 754 (applying Colorado contract law); *First Horizon*, 2017 WL 2954716, at *10 (applying Tennessee contract law). Second, coverage was denied in those cases because each respective request for document production was accompanied by a disclaimer of any wrongdoing. The respective courts reasoned that a demand for documents that explicitly disclaims any wrongdoing does not seek relief.

The insurance policies in *ProMedical Health*, *MusclePharm*, and *First Horizon* each contained coverage sections similar to the present policy, which afforded coverage on account of a Loss on a Claim for a Wrongful Act. The policies specifically defined the terms, Loss, Claim, and Wrongful Act. Coverage could be afforded only if each of these elements were met. Each policy defined a "Claim" to be, in part, a demand for non-monetary relief, and did not specifically

define term "relief." Because the requests in those cases contained disclaimers, the courts conflated "relief" and Wrongful Act.

For example, in *MusclePharm*, the Order and related subpoenas disclaimed that the FTC's investigation was being "made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object." *Musclepharm*, 712 F. App'x at 750. The Sixth Circuit found that: (1) a claim under the policy required relief; (2) relief required the redress of wrongdoing; (3) the language in Order and related subpoenas disclaimed any wrongdoing; and therefore, (4) there necessarily cannot be a claim. *Id.* at 754. The courts in *ProMedical Health* and *First Horizon* based their decisions, in large part, on similar reasoning. *See ProMedical Health*, 524 F. App'x at 252 (disclaimer held that "[n]either this letter nor the existence of this nonpublic investigation should be construed as indicating that a violation has occurred or is occurring" and the court determined that); *First Horizon*, 2017 WL 2954716, at *10 (explaining that "[t]aking the Policy as a whole . . . . these subpoenas and/or CIDs do no constitute a Claim under the Policy because the documents do not contain allegations of a "Wrongful Act.).

This analysis, however, conflates elements. Whether a request is a Claim is a distinct question from whether that request is for a Wrongful Act. The written demands in *ProMedical Health*, *MusclePharm*, and *First Horizon* are more accurately characterized as claims that were not afforded coverage because they were not made pursuant to a wrongful act. Further, it was not necessary for the courts in *ProMedical Health*, *MusclePharm*, and *First Horizon* to address this distinction because without any wrongdoing, there was no wrongful acts—thus, no coverage.

The present action does not present the Court with this option because, as discussed herein, the OIG Subpoena alleges wrongdoing. The Court notes, however, that even if the OIG Subpoena

did not allege any wrongdoing, it is still a Claim under the Policy's definition and the Court's "demand for something due" interpretation of the term relief.

**Subsection (g)**

IUIC argues that subsection (g), as amended by Endorsement No. 5, supports its interpretation of the Policy as precluding coverage of subpoenas served on the Company, including over subsection (a). Subsection (g) originally defined a claim as:

> (g) a civil, criminal, administrative or regulatory investigation commenced by:
>
> > (i)      the service upon or other receipt by any nature person Insured of a written notice, investigative order, or subpoena; or
> >
> > (ii)     the service upon or other receipt by any Company of a written notice or investigative order; from the investigating authority identifying such natural person Insured as an individual, or such Company as an entity, respectively, against whom a proceeding described in paragraphs c, d, or f immediately above may be commenced . . . .

(Dkt. #6, Exhibit 5 at p. 41). The subsection was thereafter amended by Endorsement No. 5 to read:

> (g)     a civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by any natural person Insured of a written notice, investigative order, or subpoena from the investigating authority identifying such natural person Insured as an individual, against whom a proceeding described in paragraphs c, d or f immediately above may be commenced . . . .

(Dkt. #6, Exhibit 5 at p. 22–23)

IUIC argues that Endorsement No. 5's deletion of any civil, criminal, administrative or regulatory investigation commenced by "the service upon or other receipt by any Company of a written notice or investigative order" from the definition of Claim under subsection (g) establishes that there was no intent to provide coverage for a subpoena served on Oceans. IUIC's contends if a subpoena could satisfy subsection (a), there would be no need to address subpoenas of the

Company in the original version of subsection (g). That is, interpreting subsection (a) to include subpoena of the Company would render meaningless the amendment of subsection (g) by endorsement deleting investigative subpoenas served upon the Company from that definition. The Court is not convinced.

Endorsement 5 expands the definition of a Claim and does not function to limit it. The Policy lays out ten specific definitions of a Claim, all set out in the disjunctive—separated by the word "or." Therefore, "each subpart must be considered separately*." LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664 (5th Cir. 2015) (citing *PPG Indus., Inc. v. Shell Oil Co.*, 727 F.Supp. 285, 287 (E.D. La.1989) ("[U]nder the law of Texas, contract language should be given its "plain grammatical meaning." Simply stated, "or" is disjunctive, or alternative in its effect.).

Further, if the Court also found reasonable IUIC's interpretation of subsection (g)—as functioning to exclude the OIG Subpoena from subsection (a)'s definition—this would render the section ambiguous. Fundamental Texas insurance law principles mandate ambiguity be resolved in favor of coverage. *See Texas Industries, Inc. v. Factory Mutual Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007) (explaining that "when an insurance policy can be given multiple reasonable interpretations, '[i]t is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer.'") (quoting *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984)).

As the Court agrees with Oceans that the OIG Subpoena satisfies the definition set out in subsection (a), it is trivial to determine whether it also meets subsection (g). The Court now considers whether the OIG Subpoena is for Wrongful Acts.

### ii.     Wrongful Act

IUIC next argues that, if the OIG Subpoena is a Claim, it fails to fall into the zone of coverage because it fails to allege any Wrongful Act.  The Policy defines a Wrongful Act as "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by (C) the Company, but only with respect to Insuring Clause 3 of this Coverage Section . . . ."  (Dkt. #6, Exhibit 5 at p. 70).  IUIC argues that the OIG Subpoena does not allege any wrongdoing and, instead, merely sought the production of documents in connection with an investigation into unspecified FCA violations.  IUIC cites two cases to support its narrow interpretation.

Oceans responds that the OIG Subpoena alleges a Wrongful Act because it identified the target—Oceans; identified its investigative purpose— "in connection with an investigation being conducted by the OIG into possible False Claim violations;" and identified the investigation period as the prior eight (eight) years (2008–2015).  Oceans again maintains, and the Court agrees, that *Agilis* germane on this issue.

The search warrant in *Agilis*, sought "evidence, contraband, or property used or intended to be used as the means of committing a criminal offense concern a violations [sic] of Title 26 U.S.C. Sections(s) 7212, 7201 and Title 18 U.S.C. 371." *Agilis* 2010 WL 11595321, at * 13.  The court found that the service of a grand jury subpoena and the execution of a search warrant on plaintiffs that referenced criminal statues was more than enough to show that the IRS was alleging that plaintiff committed "Wrongful Acts" under a policy that defined the term identical to the one in the present action.  *Id*.  Here, the OIG Subpoena requested documents that were dated, created, revised, or in effect during the Subpoena Period "in connection with an investigation into . . . possible False Claims Act violations under 31 U.S.C. sec. 3729-3733 . . . ."  (Dkt. #21, Exhibit 1

at p. 7).  Although, the present action contains no allegations that the OIG issued and/or executed a search warrant, the OIG Subpoena contains all of the information that the court in *Agilis* found tantamount alleging a wrongful act.  The OIG Subpoena sufficiently alleges FCA violations.

The Court, finding that the OIG Subpoena is a Claim for a Wrongful Act, now considers whether it is covered under the Policy.

### III.    Duty to Defend, Duty to Pay Defense Cost, and the Eight-Corners Rule

The parties dispute the nature of IUIC's financial obligations under the Policy. Specifically, whether IUIC has the duty to defend claims first made during the policy period or a duty to pay the cost of defending those claims.  This distinction is significant for two reasons. First, if the Policy confers IUIC a duty to defend claims made, the Court is constrained to determine whether IUIC has a duty to defend the OIG Subpoena by looking only to eight-corners of the subpoena and Policy.  The Court, notwithstanding a narrow exception, would not be allowed to consider extrinsic evidence, such as the *qui tam* complaint.  Second, if IUIC has duty to defend, IUIC would be obligated to defend the OIG Subpoena in its entirety—even if it is only partially covered.

The IUIC Policy's Coverage Section Insurance Clause 3 provides, pertinent part:

A Loss is defined as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court and Costs, Charges, Expenses incurred by … Company under Insuring Clause 3." Costs, Charges and Expenses means: reasonable and necessary costs charges, fees and expenses incurred by the Insurer, or by any Insured with the Insurer's consent, in defending Claims and the premium for appeal, attachment or similar bonds arising out of covered judgments
. . . .
"It shall be a duty of the Insured and not the duty of the Insurer to defend any Claim."

(Dkt. #6, Exhibit 5 at p. 44, 77).

IUIC argues that the plain language of the Policy charges it with no affirmative duty defend claims; rather, only obligates it pay for the defense costs in defending a claim. Oceans concedes that the Policy does not contain a standard duty to defend clause. Oceans, however, argues that IUIC's duty to advance defense costs is akin to a duty to defend and should be subject to the automatic trigger and eight-corners rule. Oceans relies on three cases it contends stands for the proposition that the eight-corners rule applies to the duty to pay defense—even where the insurer has no duty to defend. *See Julio & Sons Co. v. Travelers Cas. and Sur. Co. of Am.*, 591 F.Supp.2d 651 (S.D. N.Y. 2008) (applying the eight-corners rule to a duty to pay defense cost reasoning that there was no material difference between an unconditional duty to advance payment cost and a duty to defend); *Basic Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, 655 F.Supp.2d 666 (W.D. Tex. 2009) (vacated following settlement) (applying the eight-corners rule to a duty to reimburse defense costs reasoning that "this reimbursement of defense costs obligation is most analogous to a duty to defend, even when the duty to defend is explicitly disclaimed"); *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 681 F.Supp.2d 816 (S.D. Tex. 2010), modified on appeal by *Pendergest-Holt v. Certain Underwriter's at Lloyd's of London*, 600 F.3d 562, 574 (5th Cir. 2010).[2] Oceans is correct in its analysis of the lower court's decision in *Pendergest-Holt*. On appeal, however, the Fifth Circuit modified the lower court's decision by explicitly addressing and declining to apply the eight-corners rule in a context outside of an insurer's duty to defend. *See Pendergest*-Holt, 600 F.3d at 574.

---

[2] Oceans also argues that the Fifth Circuit applied the eight-corners rule to an insureds duty to pay defense costs in *The City of College Station, Texas v. Star Ins. Co.*, 735 F.3d 332, 336-340 (5th Cir. 2013). This, however, is not completely accurate. The Fifth Circuit only applied the eight-corners rule because the insurer abandoned its contention that the policy in question did not impose a duty to defend. *Id.* at 337 (holding that "the City contended that the duty to reimburse is measured by the same metric as the duty to defend. The district court implicitly agreed with the City, applying the eight-corners rule to determine SIC's liability for defense costs. On appeal, SIC relies exclusively on the argument that the eight-corners rule does not trigger liability, abandoning its earlier contention that the City's policy did not impose a duty to defend. We hold SIC to its forfeiture and turn to apply the eight-corners rule to the facts of this case.".

The lower court in *Pendergest-holt* applied the eight-corners rule in to a duty to advance costs reasoning that "in the absence of Texas court decisions explicitly refusing to apply the eight corners rule in cases such as this one—in which no duty to defend exists but in which there is a duty to advance defense costs—and with no explicit direction from Texas courts to apply a different standard, the logic employed by the *Julio & Sons* and *Basic Energy* courts is persuasive." *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 681 F.Supp.2d 816, 828 (S.D. Tex. 2010). The Fifth Circuit modified the lower court's decision and explicitly reserved the application of the eight-corners rule in any context other than a duty to defend until the Texas Supreme Court established that such was possible. The Fifth Circuit explained:

> The Texas Supreme Court has spoken of the eight corners rule only in the context of duty-to-defend cases, and no Texas state court has applied the rule to a case, like the present one, involving a duty to advance defense costs. Whatever the Texas Supreme Court might do to resolve the issue in a future case, however, we need not venture a guess in this one: the D&O Policy's terms plainly state that the underwriters must advance defense costs "until it is determined that the alleged act or alleged acts did in fact occur" and, in so doing, require recourse to something more than mere allegations. The terms contemplate the use of extrinsic evidence in making the determination. Thus, we need not and hence do not pause to decide whether the eight corners rule applies to the duty to advance costs as a general matter . . . .

*Pendergest*-Holt, 600 F.3d at 574 (internal citations omitted). Although the Fifth Circuit did not foreclose on the applicability of the eight-corners rule to cases involving a duty to advance defense costs, the Court finds it prudent to echo this reluctance and await guidance from the Texas Supreme Court.

The Fifth Circuit nevertheless found that even if the eight-corners rule did apply, the parties displaced it because the insurance policy anticipated the use to extrinsic evidence to determine coverage. *Id.* at 574 (explaining that "[t]exas prefers freedom of contract and honors the well-worn prerogatives of parties to override judge-made doctrines—like the eight corners rule—by

contracting around them. . . . Assuming but not deciding the eight corners rule would have applied, the parties chose—in plain language—to displace it and to provide for the use of extrinsic evidence."). The Court finds this to be true in the present action.

The Allocation clause provides that IUIC "shall advance, on a quarterly basis Costs, Charges, and Expenses which the Insurer believe to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined." (Dkt. #6, Exhibit 5 at p. 45). Texas law requires that the Court interpret contracts to effectuate the intent of the parties. Here, the plain language of the Policy anticipates the use of extrinsic evidence and therefore the parties could not have intended to look only to the eight-corners when evaluating IUIC's financial obligation with respect to claims made under the Policy.

Lastly, even if the parties did not displace the eight-corners rule, some Texas courts have recognized a narrow exception where an insurer does not dispute the merits of the underlying claim and the extrinsic evidence goes "strictly to an issue of coverage without contradicting any allegation in the pleadings material to the merits of the underlying claim." *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex. App.—Corpus Christi 1992, writ denied) (concluding that extrinsic evidence could be admitted in deciding the duty to defend when the facts alleged are insufficient to determine coverage and "when doing so does not question the truth or falsity of any facts alleged in the underlying petition"). Here, IUIC neither contests nor disputes the merits of the *qui tam* action. IUIC advocates for the use of the *qui tam* complaint for the limited purpose of discerning its relation, if any, to the OIG Subpoena. If the OIG Subpoena and the *qui tam* action are related, the *qui tam* complaint may prove useful to expound on the conduct set out in the subpoena. A more definite understanding of the OIG Subpoena's allegations of FCA violations

may help establish whether the conduct falls in the zone of coverage. This is a pure coverage inquiry and does not evoke the concerns protected by the eight-corners rule.

In any event, IUIC does not have a duty to defend and the eight-corners rule is not applicable to present action. The Court turns now to whether the OIG Subpoena is precluded from coverage by the Policy's Run-Off Exclusion.

## IV. The Policy's Run-Off Exclusion

IUIC contends that the OIG Subpoena is precluded from coverage by the Policy's Run-Off Exclusion, which provides:

> The Insurer shall not be liable for that portion of Loss under this Coverage Section on account of any Claim:
> i. Alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act or Interrelated Wrongful Act taking place, in whole or in part, subsequent to the Run-Off Date.

*See* (Dkt. #21, Exhibit 1 at p. 4–5). The Policy sets the Run-Off Date as December 27, 2012.

IUIC argues that the OIG Subpoena's request for documents dated after December 27, 2012, establishes that the FCA violations—Wrongful Acts—are alleged to have occurred after the Run-Off Date. This contention, IUIC argues, is supported by specific allegations of FCA violations in *qui tam* complaint that occur after the Run-Off Date.

Oceans' argument that the Run-Off exclusion does not apply is premised on and fails because of its inaccurate presumption that IUIC has duty to defend. Oceans contends that the Court should construe the OIG Subpoena's demand for documents created during the Subpoena Period as alleging that FCA violations—Wrongful Acts—potentially occurred at any time from January 1, 2008, through August 27, 2015. Therefore, Oceans contends, because the OIG Subpoena alleges FCA violations potentially taking place before and after the Run-Off Date— December 27, 2012—IUIC is obligated to defend the subpoena in its entirety. This logic would

prove true if the Policy conferred IUIC a duty to defend. Because it does not, however, the plain language of the Run-Off Exclusion makes the inverse true: if the OIG Subpoena is for Wrongful Acts or Interrelated Wrongful Acts that occurred before and after the Run-Off date, it is not covered. By the Policy's terms, the OIG Subpoena is precluded from coverage if it alleges, is based upon, arises out of, is attributable to, directly or indirectly results from, is in consequence of, or in any way involves any alleged FCA violation or alleged FCA violation that have a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes taking place, in whole or in part, subsequent to December 27, 2012. The Fifth Circuit has held that "[w]hen an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Century Surety Company v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018) (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)).

Oceans attempts to qualify, or completely reverse, its prior position and argues that the Run-Off Date Exclusion does not apply because the OIG Subpoena's allegations of FCA violations are not narrowed to exact dates. This is in direct contradiction of its contention that the Court should construe the OIG Subpoena as alleging FCA violations potentially taking place at any time from January 1, 2008, through August 27, 2015. The Court cannot accept Oceans' interpretation as reasonable.

The Court's analysis here is straightforward. The Policy's Run-Off Exclusion, drafted in the broadest manner, precludes coverage of Wrongful Acts and Interrelated Wrongful Acts that occur, in whole or in part, after December 27, 2012. The OIG Subpoena requested specified documents that were dated, created, revised, or in effect during January 1, 2008, through August

27, 2015, which were in relation to, responsive of, and in connection with allegations of FCA violations—Wrongful Acts. The only reasonable interpretation of an investigative OIG Subpoena that alleges FCA violations and demands responsive documents created during the Subpoena Period is that the FCA violations are alleged to have occurred during this period.

It is clear from the face of the OIG Subpoena that it alleges FCA violations, in whole or in part, from January 1, 2008, through August 27, 2015. Thus, the Run-Off Exclusion precludes coverage of the OIG Subpoena that arises out of Wrongful Acts or Interrelated Wrongful Acts that occurred after the Run-Off Date.

The Court, finding the OIG Subpoena is preclude from under the Run-Off Exclusion, declines to address IUIC's alternative argument concerning the Policy's Government Funding Defense Costs Sublimit.

## V. Attorneys' Fees

IUIC requests attorneys' fees in connection with its counterclaims for a declaratory judgment. It, however, fails to provide a legal basis for its request. The Court assumes that IUIC's request is made pursuant to either the federal or state declaratory judgment act.

To the extent that IUIC brings its request under the Texas Declaratory Judgments Act (DJA), its request should be denied. The DJA, as set forth in Chapter 37 of the Texas Civil Practice and Remedies Code—and more specifically—Section 37.009, provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The Fifth Circuit has, however, foreclosed the use of the DJA in federal court. *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 411 (5th Cir. 2006); *Olander v. Compass Bank*, 363 F.3d 560, 567–68 (5th Cir. 2004). The Court is to "apply state attorney's fee law only when it embodies a substantive policy."

*Camacho*, 455 F.3d at 412. And, the Fifth Circuit has held that the DJA is procedural and not substantive. Id. "The Declaratory Judgments Act does not confer new substantive rights upon the parties nor additional jurisdiction on the courts but merely provides a procedural device for determination of controversies which are already within the jurisdiction of the courts." *Hous. Auth. of City of Harlingen v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied). IUIC has not identified a substantive statute that provides for attorneys' fees in the disposition of its declaratory judgment counterclaims.

To the extent that IUIC brings its request under the Federal Declaratory Judgement Act, that request is likewise denied. The Federal DJA, as set forth 28 U.S.C. § 2202 provides "further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." The Fifth Circuit has stated that the Federal DJA "does not provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action." *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (citing *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988)). Again, IUIC has not identified a substantive statute that provides for attorneys' fees in the disposition of its declaratory judgment counterclaims. The Court therefore finds that IUIC's request for attorneys' fees should be denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Rule 12(c) Motion for Judgment on the Pleadings (Dkt. #21) is **DENIED**. It is further **ORDERED** that Defendant Illinois Union Insurance Company's Motion for Judgment on the Pleadings (Dkt. #17) is **GRANTED IN PART** as follows: Defendant Illinois Union Insurance Company's request that the Court declare that Plaintiff is not

entitled to coverage under the Policy for the OIG Subpoena is **GRANTED**; Defendant Illinois Union Insurance Company's request for attorneys' fees is **DENIED**. Plaintiff Oceans Healthcare LLC's claims for breach of contract and violations of Chapter 542 of the Texas Insurance Code—premised, in their entirety, on the OIG Subpoena—are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED this 30th day of March, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE